**Donald C. TOBIAS, Plaintiff,**

v.

**SHELL OIL COMPANY, Defendant.**

**Civ. A. No. 84–1231–A.**

United States District Court,
E.D. Virginia,
Alexandria Division.

April 9, 1985.

---

Robert L. Fredericks, Jr., Fairfax, Va., for plaintiff.

Maureen E. Mahoney, Alexandria, Va., for defendant.

### MEMORANDUM OPINION

RICHARD L. WILLIAMS, District Judge.

This case comes before the Court on plaintiff's and defendant's cross motions

---

for summary judgment. The case involves a discrete issue of law raised under the Petroleum Marketing Practices Act, 15 U.S.C. §§ 2801 *et seq.* ["PMPA"]. Specifically, the Court must determine whether the facts of this case include a bona fide offer to sell, transfer or assign a franchise interest under PMPA § 2802(b). For the reasons stated below, the Court finds that the defendant made a bona fide offer of sale and, therefore, grants summary judgment in favor of the defendant.

## FACTS

The case involves a petroleum franchise relationship between plaintiff Donald C. Tobias and defendant Shell Oil Company. Plaintiff leased from defendant an automobile service station located in Fairfax County, Virginia. Plaintiff also retailed Shell Petroleum Products and other Shell products under the terms of a dealer agreement between the parties. The lease and the dealer agreement ran from July 1, 1981 to June 30, 1984.

By letter dated November 8, 1983, defendant notified plaintiff that it did not intend to renew the lease and dealer agreement when they expired in June. Defendant stated in the letter that its decision was made in good faith and in the normal course of business. In a second letter dated March 9, 1984, defendant offered to sell the service station to plaintiff for $183,-000.00. The offer, however, specifically excluded the underground storage tanks used for storage of motor vehicle fuels. Defendant offered to remove the tanks at no cost to plaintiff.

Following the March 9th letter, plaintiff and defendant entered into a series of negotiations regarding the sale of the service station. During these negotiations, plaintiff requested that the existing storage tanks remain in place. Defendant, however, refused plaintiff's request based on environmental considerations. The five tanks presented a significant risk of environmental damage.[1] On June 26, 1984, plaintiff accepted defendant's original offer of sale and negotiations continued as to financing. On June 27, 1984, defendant extended plaintiff's lease for an additional 90 days in order to close the sale.

During the lease extension, defendant offered to sell plaintiff new fiberglass storage tanks at cost. Plaintiff, though, refused the offer. The sale of the service station closed on October 16, 1984. On or about October 29, 1984, defendant removed the existing fuel storage tanks from the premises.

## DISCUSSION

The discrete issue raised by this case is whether defendant Shell Oil Company's offer to sell the service station, absent the existing fuel storage tanks, constitutes a bona fide offer under PMPA § 2802(b). PMPA regulates the relationship between petroleum franchisors and franchisees, including the conditions and grounds for which a franchisor may terminate or not renew a franchise. Under § 2802(b) of the Act, a petroleum franchisor such as Shell Oil Company can decide not to renew a franchise relationship if it makes a good faith determination to sell its service station in the normal course of business. *See* 15 U.S.C. § 2802(b)(3)(D)(i). In addition, the Act requires a franchisor to make a bona fide offer to sell, transfer, or assign to the franchisee the franchisor's interest in the service station. The offer must be made within 90 days of a notice of nonrenewal. *See* 15 U.S.C. § 2802(b)(3)(D)(iii). In this case, plaintiff does not dispute defendant's good faith in determining nonrenewal. However, plaintiff maintains that defendant did not make a bona fide offer of

---

**1.** Of the five existing storage tanks, three were 20 years of age, one was 17 years old and one was 13 years old. More than 85% of all fuel leaks which can cause serious environmental damage occur in steel tanks over 10 years of age. *See* American Petroleum Institute Tank and Piping Leak Survey (1981). In addition, the tanks were made of unprotected steel, a type of tank that Congress has prohibited from new installation due to its risk of environmental harm. *See* The Hazardous and Solid Waste Amendments of 1984, Pub.L. 98–616, § 601, 98 Stat. 3221, 3277 (1984).

sale, as required by the Act, because its offer excluded the existing storage facilities.

The question of what constitutes a bona fide offer under § 2802(b) is novel to this circuit. Moreover, only one other circuit has addressed the issue. In *Roberts v. Amoco Oil Co.*, 740 F.2d 602 (1984), the Eighth Circuit concluded as a matter of law that a franchisor must offer for sale its interest in all of the equipment used in distributing motor fuel, including but not limited to the franchisor's interest in the existing gasoline pumps, storage tanks and dispensers. The *Roberts* court voiced a concern for protecting franchisees from franchisor domination and read the statute's language in a manner that requires a franchisor to always offer for sale all of the station's existing equipment regardless of a hazardous condition.[2]

This Court shares the Eighth Circuit's concern for franchisees, which is a dominant feature of PMPA, but refuses to join in such a strict reading of what constitutes a bona fide offer of sale. Although defendant in this case refused to sell the existing fuel storage tanks, this Court nevertheless finds that the offer satisfied § 2802(b) of the Act.

There are a number of reasons why defendant's offer of sale in this case was bona fide. First, defendant refused to sell storage tanks that were known to present a high risk of environmental damage. To read PMPA in a manner that forces petroleum franchisors to sell all of its service station equipment, including environmentally hazardous storage tanks, is not only unsound but is inconsistent with congressional intent to protect the environment.[3] Second, defendant offered to sell plaintiff new fiberglass fuel storage tanks at cost. This offer was made during sale negotiations and illustrates defendant's willingness to provide plaintiff with an opportunity to purchase tanks on very reasonable terms. Finally, there is no evidence in this case of franchisor domination or manipulation. Defendant's actions, in fact, indicate a good faith willingness to work with plaintiff as opposed to arbitrary or discriminatory conduct prohibited by the Act. For all these reasons, this Court finds that defendant's offer to sell the service station, absent the existing storage tanks, was a bona fide offer of sale under PMPA § 2802(b).

---

2. The *Roberts* court looked to the definition of "leased marketing premises" in PMPA § 2801(9) to support its objective interpretation of what constitutes a bona fide offer of sale. The Act defines marketing premises as "[those] premises owned, leased, or in anyway controlled by a franchisor and which the franchisee is authorized or permitted, under the franchise, to employ in connection with the sale, consignment, or distribution of motor fuel."

3. *See* Pub.L. 98–616, *supra* note 1.